IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jason Bradley, on behalf of himself and others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>PNC Bank N.A.,<br><br>      Defendant. | Case No.:<br><br>**PLAINTIFF DEMANDS JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Jason Bradley, individually and on behalf of the class preliminarily defined below, makes the following allegations related to himself on the basis of personal knowledge and the following allegations related to others on the basis of information and belief, including attorney investigation.

### INTRODUCTION

1. Plaintiff, Jason Bradley, brings this action, individually and on behalf of similarly situated persons with respect to whom PNC violated a statutory and contractual duty to mail or deliver a release of security interest and/or certificate of title by a statutorily prescribed deadline after PNC received the last payment necessary to satisfy PNC's security interest in Plaintiff's and Class Members' vehicles.

2. PNC is in the business or originating, taking assignment of, and/or servicing loans secured by vehicles.

3. PNC is statutorily and contractually required to mail or deliver a release of security interest and/or certificate of title for no additional charge after a borrower pays off his or her vehicle

loan.

4. Despite this obligation, PNC directs borrowers who have paid off their loans but who do not receive the release of security interest and/or certificate of title to a third-party website that charges a fee for providing proof of lien releases.

5. As a result of PNC's failure to timely mail or deliver releases and/or certificates of title after receiving payments satisfying PNC's security interest in the vehicles owned by Plaintiff and other similarly situated borrowers, Plaintiff and those similarly situated are entitled to actual damages (including compensation for the expense of obtaining proof that PNC has released its security interest in their vehicles and/or compensation for the expense of acquiring new certificates of title), statutory penalties, punitive damages, attorney's fees, and costs.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff, Jason Bradley, resides in Madison County, Illinois.

7. Defendant, PNC Bank N.A., is a District of Columbia corporation with its principal place of business in Pennsylvania.

8. This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332(d) because this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and in which any member of the class of plaintiffs is a citizen of a state different from PNC.

9. This Court may exercise personal jurisdiction over PNC because PNC purposefully directed its activities to Illinois; Plaintiff's claims arise out of or relate to PNC's purposeful contacts with Illinois, and the maintenance of this suit in Illinois is reasonable and does not offend traditional notions of fair play and substantial justice.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

11. Plaintiff purchased a new 2015 Volkswagen Golf (the Vehicle) from Auffenberg VW in Madison County, Illinois on May 9, 2015. In connection with his purchase of the Vehicle, Plaintiff entered into a contract with Auffenberg VW (the Contract). (Ex. A.) In the Contract, Plaintiff agreed to pay Auffenberg VW $500.85 per month for 84 months. (*Id.*)

12. As security for the loan evidenced by the Contract, Plaintiff provided Auffenberg VW a security interest in the Vehicle. (*Id.*)

13. In the Contract, Auffenberg impliedly agreed, by operation of 625 ILCS 5/3-205 and usage of trade/industry practice, that after Auffenberg VW received payment to satisfy its security interest in the Vehicle, Auffenberg would execute a release of its security interest, and mail or deliver the release of security interest and certificate of title to Plaintiff.

14. Auffenberg VW assigned the Contract to PNC on May 9, 2015.

15. Auffenberg VW delivered the certificate of title to the Vehicle to PNC on or shortly after May 9, 2015.

16. On May 21, 2022, PNC received payment to satisfy its security interest in the Vehicle.

17. On September 3, 2022, Plaintiff went in person to PNC Bank in Collinsville, Illinois, and inquired about and requested his release of lien and certificate of title because he had not yet received them.

18. On September 3, 2022, a PNC employee told Plaintiff that Plaintiff's release of lien and certificate of title were lost in the mail.

19. On September 3, 2022, the same PNC employee told Plaintiff he could acquire a lien release letter through vehicletiltemyway.com.

20. On September 3, 2022, the PNC employee told Plaintiff that Plaintiff could use the lien release letter obtained through vehicletitlemyway.com to obtain a new certificate of title from the

3

Illinois Department of Motor Vehicles.

21. Vehicletitlemyway.com is a website operated by BerkOne, Inc., a Pennsylvania corporation headquartered in Pennsylvania.

22. For a fee of $26.00 per vehicle, BerkOne provides PNC borrowers lien release letters showing that the borrowers' vehicle loans have been paid off.

23. Plaintiff requested a lien release letter from BerkOne on or around September 6, 2022.

24. Plaintiff paid BerkOne $26.00 for the lien release letter on or around September 6, 2022.

25. About a week after Plaintiff paid BerkOne for the lien release letter, Plaintiff received a lien release letter from BerkOne.

26. On or around December 17, 2022, Plaintiff went to the Illinois Department of Motor Vehicles to obtain a replacement title for the Vehicle.

27. On or around December 17, 2022, Plaintiff paid the Illinois Department of Motor Vehicles $50.00 to obtain a replacement title for the Vehicle.

## CLASS ACTION DEFINITIONS

28. Plaintiff brings this action on behalf of himself and a class of similarly situated owners of vehicles titled in Arkansas, Alaska, Connecticut, the District of Columbia, Delaware, Illinois, Indiana, Kentucky, Maine, Mississippi, Missouri, Montana, New Hampshire, New Jersey, Vermont, West Virginia, or Wyoming from whom PNC received payment to satisfy its security interest in such persons' vehicles within four years before the filing of this action and to whom (or to whose authorized designee) PNC failed to mail or deliver a release of security interest or certificate of title by the statutory deadline for doing so

29. Excluded from the Class are (i) any judges presiding over this action and members

of their families; (ii) Defendant, Defendant's subsidiaries, parents' successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former offers and directors; (iii) employees who (a) have or had a managerial responsibility on behalf of the organization, (b) whose act or omission in connection with this matter may be imputed to the organization for purposes of civil liability, or (c) whose statement may constitute an admission on the part of Defendant; (iv) persons who properly execute and file a timely request for exclusion from the class; (v) the attorneys working on Plaintiff's claims; and (vi) the legal representatives, successors, or assigns of any such excluded persons.

30. Numerosity. The Class includes hundreds or thousands of members, making their individual joinder impracticable. Although the exact number of Class Members and their addresses are unknown to Plaintiff, they are readily ascertainable from PNC's records.

31. Feasibility of Notice. Class Members may be notified of the pendency of this action by mail and/or electronic mail and supplemented (if deemed necessary or appropriate by the Court) by published notice.

32. Typicality. Plaintiff's claims are typical of claims of the Class Members because Plaintiff and the Class Members sustained damages because of PNC's uniform wrongful conduct during transactions with Plaintiff and the Class Members.

33. Adequacy. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent. Plaintiff has retained competent and experienced counsel, and Plaintiff intends to prosecute this action vigorously. The interests of Class Members will be treated fairly and adequately protected by Plaintiff and his counsel.

34. Predominance and Superiority. This class action is appropriate for certification because class proceedings are superior to all over available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. The damages suffered by the individual Class Members will likely be small relative to the burden and expense of

individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief for Defendant's misconduct. Even if Class Members could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

35. Commonality and Predominance: Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual members, and include, but are not limited to:

a. Whether Plaintiff and Class Members entered into contracts with, or that were assigned to, PNC.

b. Whether the contracts gave PNC a security interest in Plaintiff's and Class Members' vehicles.

c. Whether the contracts required PNC to mail or deliver a release of security interest and/or certificate to title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles.

d. Whether PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles.

e. Whether PNC failed to mail or deliver a release of security interest and/or certificate to title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles.

f. Whether PNC's failure to mail or deliver a release of security interest and/or

6

    certificate to title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles was a breach of the contracts.

g. Whether Plaintiff and Class Members were damaged by PNC's failure to mail or deliver the release and/or certificate of title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles.

h. Whether applicable statutes required PNC to mail or deliver a release of security interest and/or certificate of title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles.

i. Whether PNC's failure to mail or deliver a release of security interest and/or certificate to title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles was a statutory violation.

j. Whether Plaintiff and Class Members are entitled to statutorily prescribed penalties for PNC's failure to mail or deliver a release of security interest and/or certificate to title to Plaintiff and Class Members within a statutorily specified number of days after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles.

k. Whether PNC's failure to mail or deliver a release of security interest and/or certificate to title to Plaintiff and Class Members after PNC received payment to satisfy its security interest in Plaintiff's and Class Members' vehicles was unfair.

l. Whether PNC's requirement that Plaintiff and Class Members obtain a release of lien letter from BerkOne for a fee was unfair.

m. Whether Plaintiff and Class Members sustained injury and damage resulting from PNC's unfair conduct.

36. Ascertainability. The Class is defined clearly, and membership in the Class is defined by objective criteria.

37. Plaintiff reserves the right to revise the definition of the Class and common questions, including based upon facts learned in discovery.

### COUNT I:  BREACH OF CONTRACT

38. Plaintiff incorporates the preceding paragraphs of this Complaint.

39. PNC failed to mail or deliver a release of security interest and/or certificate of title to Plaintiff within 21 days after PNC's receipt of payment to satisfy the security interest in Plaintiff's Vehicle, as required by the below--referenced provision of the Illinois Motor Vehicle Code.

40. PNC breached the Contract by not mailing or delivering to Plaintiff a release of its security interest in the Vehicle or certificate of title to Plaintiff within 21 days after PNC's receipt of payment to satisfy its security interest in Plaintiff's Vehicle.

41. Plaintiff sustained injury and damage resulting from PNC's breach of the Contract because Plaintiff had to pay $26.00 to obtain a release of lien letter from BerkOne and Plaintiff had to pay $50 to obtain the certificate of title from the Illinois Department of Motor Vehicles.

### COUNT II: PRIVATE CAUSE OF ACTION FOR FAILING TO COMPLY WITH STATUTORY DEEADLE FOR PROVIDING RELEASE OF SECURITY INTEREST OR CERTIFICATE OF TITLE LIEN

42. Plaintiff incorporates the preceding paragraphs of this Complaint, except Count I.

43. The Illinois Vehicle Code, at 625 ILCS 5/3-205, provides in part:

> (a) Within 21 days after receiving payment to satisfy a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, he shall execute a release of his security interest, and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. If the payment is in the form of cash, a cashier's check, or a certified check, the number

of days is reduced to 10 business days. If the owner desires a new certificate reflecting no lien, the certificate and release from the lienholder may be submitted to the Secretary of State, along with the prescribed application and required fee, for issuance of that new certificate.

(b) Within 21 days after receiving payment to satisfy a security interest in a vehicle for which the certificate of title is in the possession of a prior lienholder, the lienholder whose security interest is satisfied shall execute a release and deliver the release to the owner or any person who delivers to the lienholder an authorization from the owner to receive it. If the payment is in the form of cash, a cashier's check, or a certified check, the number of days is reduced to 10 business days. The lienholder in possession of the certificate of title may either deliver the certificate to the owner, or the person authorized by him, for delivery to the Secretary of State, or, upon receipt of the release, may mail or may deliver the certificate and release, along with prescribed application and require fee, to the Secretary of State, who shall issue a new certificate.

(c) In addition to any other penalty, a lienholder who fails to execute a release of his or her security interest or who fails to mail or deliver the certificate and release within the time limit provided in subsection (a) or (b) is liable to the person or entity that was supposed to receive the release or certificate for $150 plus reasonable attorney fees and court costs. An action under this Section may be brought in small claims court or in any other appropriate court.

44. PNC failed to mail or deliver a release of security interest and/or certificate of title to Plaintiff within 21 days after PNC's receipt of payment to satisfy the security interest in Plaintiff's Vehicle.

45. Under 625 ILCS 5/3-205(c), Plaintiff is entitled to recover from PNC a $150 penalty, plus reasonable attorney fees and court costs, for PNC's violation of 625 ILCS 5/3-205(a) or (b).

46. Plaintiff is also entitled to recover from PNC the above-stated amounts that Plaintiff had to pay BerkOne and the Illinois Department of Motor Vehicles, respectively, for the release and title certificate that 625 ILCS 5/3-205 required PNC to mail or deliver for no additional charge after Plaintiff satisfied PNC's lien in Plaintiff's vehicle.

47. PNC's acts and omissions described in this Complaint were willful or in reckless disregard of the right of Plaintiff to timely receive a release of lien and/or certificate of title.

## COUNT III: VIOLATION OF THE ILLINIOS CONSUMER FRAUD AND DECPETIVE PRACTICES ACT

48. Plaintiff incorporates the preceding paragraphs of this Complaint, except Counts I and II.

49. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, (hereinafter "ICFA") prohibits "[u]nfair methods of competition and unfair ... acts or practices, ... in the conduct of any trade of commerce" and declared such acts or practices unlawful.

50. PNC's acts and omissions alleged in this Complaint occurred in commerce.

51. PNC's acts and omissions alleged in this Complaint were unfair acts or practices.

52. Conduct is considered unfair if it (1) violates public policy, (2) is so oppressive that the consumer has little choice but to submit, or (3) causes consumers substantial injury.

53. PNC violated the public policy of Illinois because it failed to timely provide Plaintiff with a release of security interest or certificate of title as required by 625 ILCS 5/3-205.

54. PNC's violation of its statutory obligation to provide Plaintiff a free release-of-lien letter and certificate of title after Plaintiff satisfied PNC's lien in Plaintiff's vehicle was oppressive because it left Plaintiff with no way to obtain proof that it had satisfied PNC's lien except to pay the $26.00 fee that BerkOne charges for release-of-lien letters and no way to obtain a lien-free title except to pay the $50.00 fee that the Illinois Department of Motor Vehicles charges for certificates of title. PNC's conduct necessitating that Plaintiff pay $26.00 to BerkOne and $50.00 to the Illinois Department of Motor Vehicles to receive a release of lien letter and certificate of title respectively caused consumers, including Plaintiff, substantial injury because consumers, including Plaintiff, were required to pay money to receive what PNC was obligated to mail or deliver to them at no charge.

55. PNC's acts and omissions described in this Complaint were willful or in reckless disregard of the right of Plaintiff to timely receive a release of lien and/or certificate of title.

## RELIEF REQUESTED

For the reasons stated, Plaintiff, individually and on behalf of all other similarly situated, demands judgment in his favor and against Defendant as follows:

a. Certify this case as a class action on behalf of the above-described class and, if necessary, subclasses, and appoint Plaintiff as class representative and undersigned counsel as lead counsel;

b. Find that Defendant is liable under all legal claims asserted herein;

c. Award injunctive and other equitable relief as necessary to protect the interests of the Class Members;

d. Award to Plaintiffs and Class Members statutory penalties;

e. Award to Plaintiffs and Class Members compensatory damages in an amount to be determined at trial;

f. Award to Plaintiff and Class Members punitive damages to in an amount to be determined at trial;

g. Award to Plaintiff and Class Members their reasonable attorneys' fees;

h. Award to Plaintiff and Class Members costs of the action;

i. Award to Plaintiff and Class members pre- and post-judgment interest to the maximum extent allowable by law;

j. Enjoin Defendants from engaging in the unlawful conduct described in this Complaint; and

k. Award such other and further legal and equitable relief as equity and justice may require.

Dated: July 7, 2023                                     Respectfully Submitted,

/s/ *Tyler Schneider*
TORHOERMAN LAW LLC
Tyler Schneider, #6313923

11

                                      Kenneth J. Brennan, #6239037
                                      210 South Main Street
                                      Edwardsville, IL 62025
                                      (618) 656-4400
                                      tyler@thlawyer.com
                                      kbrennan@thlawyer.com

                                      &

                                    WALTON TELKEN, LLC
                                    Troy E. Walton, #6274303
                                    Michael B. Marker, #6208061
                                    241 N. Main Street
                                    Edwardsville, IL 62025
                                    (618) 307-9880
                                    twalton@waltontelken.com
                                    mmarker@waltontelkon.com